IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:

CARL H. LAMBERTI,

Plaintiff,

v.

CYCLOPS TECHNOLOGIES, INC, a Florida corporation, d/b/a PLATESMART TECHNOLOGIES

Defendants.
_______________________________________/

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, CARL H. LAMBERTI ("Lamberti") sues Defendant CYCLOPS TECHNOLOGIES, INC., d/b/a PLATESMART TECHNOLOGIES ("Platesmart") and states as follows:

**Parties, Jurisdiction and Venue**

1. Plaintiff Lamberti is a citizen and a resident of the state of Virginia.

2. Platesmart is a corporation organized and existing under the laws of the State of Florida with its principle office located at 640 Brooker Creek Boulevard, Suite 465, Oldsmar, Florida 34677.

3. Lamberti is seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332 in that there is complete diversity between Lamberti and Platesmart and because the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees.

5. Venue is proper pursuant to 28 U.S.C. § 1391 because the claims alleged herein arose in this judicial district.

**General Allegations**

6. Platesmart is a software-based, license plate recognition company. Platesmart's software uses a video camera and computer to identify and record license plates via video analytics algorithms. Platesmart's technology has been used by law enforcement agencies, the Port of Tampa, the US Navy and NCIS.

7. Despite Platesmart's unique technology and notable clientele, Platesmart struggled to obtain financing, which was necessary for the company to grow and succeed.

8. Lamberti is a former licensed broker, who has spent approximately twenty (20) years developing an impressive list of both influential and affluent contacts.

9. Platesmart, recognizing the value of Lamberti's contacts, as well as Lamberti's ability to assist struggling entities obtain needed financial resources, initially engaged Lamberti to serve as a consultant for Platesmart.

10. Lamberti's arrangement was memorialized by a Consulting Agreement, dated July 21, 2014. Among Lamberti's duties and obligations as a consultant were:

a. Assisting Platesmart with its new business development;

b. Making strategic introductions to new business contacts for the sale of Platesmart's products and technology solutions; and

c. Making strategic introductions to potential sources of funding for Platesmart's future growth.

11. In exchange for Lamberti's services, Platesmart paid Lamberti a monthly fee, and most significantly, provided Lamberti with an option to acquire shares of Platesmart. Pursuant to the terms of the Consulting Agreement, Lamberti was an independent contractor.

12. Lamberti's efforts proved to be remarkably effective, as he was directly responsible for delivering an unprecedented number of investors and financial infusion to Platesmart.

13. Pleased with Lamberti's efforts and results, Platesmart desired to create a more formal arrangement with Lamberti. On January 20, 2015, Platesmart and Lamberti entered into an Employment Agreement (hereinafter referred to as the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit "A".

14. The essential duties and obligations assigned to Lamberti were the same as those outlined in the Consulting Agreement, but the primary differences were that Lamberti was considered an employee rather than an independent contractor; he received a substantial increase in base compensation; and Lamberti's stock options were also increased and the deadline to exercise those options was extended.

15. Lamberti's stock options were memorialized through a Stock Option Certificate (hereinafter referred to as the "Certificate"), also dated January 20, 2015. A true and correct copy of the Certificate is attached hereto as Exhibit "B".

16. The Certificate provided that Platesmart "granted [Lamberti] a Stock Option to purchase all or any part of an aggregate 1,757,177 shares of the Common Stock ... at an exercise price of $.15 per share." The Certificate further provided that Lamberti's Options were exercisable

immediately, and were fully vested provided Lamberti was "in the employ or service of [Platesmart]...."

17. The Agreement and Certificate were drafted solely by Platesmart and/or its attorneys.

18. Following the execution of the Agreement and Certificate, Lamberti continued to serve as an employee of Platesmart and perform his duties and obligations as articulated in the Agreement.

19. On June 27, 2016, Platesmart, via Platesmart's in-house counsel Michael Cronin ("Cronin"), served Lamberti with a written notice of termination of the Agreement (hereinafter referred to as the "Termination"). A true and correct copy of the Termination is attached hereto as Exhibit "C".

20. On behalf of Platesmart, Cronin advised that Platesmart's contractual obligations to issue stock options to Lamberti were "considered void ab initio. Specifically, there is not an applicable exemption to authorize the issuance of these options to you under the current factual scenario." Cronin, on behalf of Platesmart, further stated "your rights to exercise any options expire upon termination of your Agreement. Therefore, you have no further rights to any stock options."

21. Based upon the absolute and immediate severing of Lamberti's vested right to exercise his stock options, Platesmart treated the Agreement as terminated effective immediately upon delivery of the Termination on June 27, 2016.

22. Section 17(b) of the Agreement addresses when Platesmart may terminate the Agreement, and the procedure required to effectuate such a termination. Section 17(b) states, in pertinent part:

> This Agreement is subject to termination by [Platesmart] upon the occurrence of any one of the following events ... (1) upon delivery to Employee of **14 days prior written notice** (for purposes of this Section 17 (b), this shall be deemed a termination "without cause"); ... or (5) a determination at any time by the Company's Board of Directors that there is cause to terminate the Employee's employment. For purposes of this Section 17(b), the term "cause" shall mean **(i) the Employee's willful misconduct or gross negligence; (ii) his conscious disregard of his obligations hereunder or of any other duties reasonably assigned him by the Company; (iii) his conscious violation of any provision of the Company's Articles of Incorporation, by-laws or any of its other written policies, standards or regulations**; (iv) his commission of any act involving moral turpitude which, in the opinion of the Company's Board of Directors, negatively impacts the Company; or (v) a determination that Employee has demonstrated a dependence upon any addictive substance, including alcohol, controlled substances, narcotics or barbiturates. **In the case of (i), (ii), or (iii) above, the Company shall give Employee a reasonably detailed description of the "cause" and a reasonable opportunity to cure prior to termination.**

23. Pursuant to the express terms of the Agreement, in order to terminate the Agreement "without cause", Platesmart was required to provide Lamberti with 14 days prior written notice before the termination could be effective.

24. As a condition precedent to terminating the Agreement "with cause", Platesmart was contractually obligated to first provide Lamberti with a detailed description of his offending conduct, and allow him a reasonable opportunity to cure any such violations before Platesmart could terminate the Agreement.[1]

25. Accordingly, whether the Termination was with or without cause, the provisions of the Agreement precluded Platesmart from immediately terminating the Agreement and thereby severing Lamberti's contractual rights to exercise his stock options.

---

[1] Although Platesmart could have terminated the Agreement immediately if the Board of Directors made a determination that Lamberti commissioned an act involving moral turpitude, or if Lamberti demonstrated a dependence upon any addictive substance, neither such circumstance exists in the matter before this Court and, therefore, will not be addressed for the purposes of this pleading.

26. The Termination, however, failed to specify the basis for the termination of the Agreement and whether the Termination was with or without cause.

27. Although Section 11 of the Agreement contains a non-disparagement provision and the Termination alleged that Lamberti "contacted shareholders and made false and defamatory statements regarding [Platesmart] and its current management," the Termination does not articulate that such conduct is the basis for terminating the Agreement. Regardless, the Termination fails to provide a detailed description to support Platesmart and Cronin's conclusory allegations, and no opportunity was provided to Lamberti to correct or cure any potential improper conduct.

28. Through its failure to comply with the express provisions of Section 17(b) – having neither provided Lamberti with 14 days prior written notice, nor providing Lamberti with a detailed description of his alleged violations and an opportunity to cure same – Platesmart knowingly violated the terms of the Agreement and willfully, improperly, and unilaterally revoked Lamberti's rights to exercise his vested stock options.

29. As further evidence of Platesmart's willful violation of the Agreement and infringement of Lamberti's contractual rights, on July 15, 2016, Cronin, as the authorized agent of Platesmart, specified "[Lamberti's] Employment Agreement has been terminated. The only question is whether the termination is for cause or without cause.... The Board of Directors will be meeting in the near future to make this final determination."

30. Upon information and belief, Platesmart attempted to immediately terminate the Agreement in order to prevent Lamberti from exercising his stock options. Specifically, on Friday, June 24, 2016, Lamberti informed Cronin that he would begin exercising his stock options. The

Termination, informing Lamberti that he would not be allowed to exercise those options was served upon Lamberti, via email correspondence, on Monday, June 27, 2016.

31. Upon information and belief, John Chigos ("Chigos"), the CEO of Platesmart, instigated the Termination in order to marginalize and discredit Lamberti, as well as certain former consultants and even an board member, who have knowledge of Chigos' misfeasance, incompetence, and inability to effectively manage Platesmart. Such issues include:

a. Kenn Campbell, CFO and a Director of Platesmart has stated on multiple occasions to multiple individuals, that "there is a time bomb in the financials" of Platesmart;

b. Platesmart refused to have audited financials prepared out of fear that an audit would reveal the "time bomb";

c. Upon information and belief, there are over $2,000,000.00 in funds that have been provided to Chigos and his wife, Kathleen Chigos (the President of Platesmart), that have been subsequently characterized as loans, but which are unreported;

d. Kenn Campbell informed Lamberti shortly before the Termination that, but for the efforts of Lamberti in obtaining an infusion of funds, Platesmart would not be able to make payroll;

e. Chigos and Kathleen Chigos are paying themselves exorbitant salaries compared to the relatively modest size and revenues of Platesmart;

f. Platesmart projected revenues for 2015 of $10,000,000, but actual revenues were approximately $1,500,000;

g. Chigos rejected efforts to improve and grow the sales department, which was necessary to increase revenues for Platesmart;

h. Webb Wang, CTO of Platesmart, characterized Chigos as delusional;

i. The Board attempted to convene in June 2016 to discuss risks the company has and continues to face, but Chigos abruptly cancelled the meeting.

32. Further, in an effort to discredit Lamberti, Platesmart, by and through its agents and employees, has contacted certain shareholders and investors, who were pre-existing contacts of Lamberti's and who were obtained through the efforts of Lamberti, and falsely informed those contacts that Lamberti did not disclose his resignation as a registered broker with FINRA. The actions of Platesmart were willful and intended to harm Lamberti's relationship with these pre-existing contacts.

33. All conditions precedent to the filing of these claims have been satisfied or have otherwise been waived.

34. Lamberti has retained the undersigned attorneys, and is obligated to pay them a reasonable fee.

## COUNT I – BREACH OF CONTRACT

35. Plaintiff Lamberti restates and realleges the allegations of paragraphs 1 through 34 above as though fully set forth herein.

36. Lamberti and Platesmart entered into the subject Agreement, for which Platesmart expressly granted Lamberti stock options, pursuant to Section 3(b) and otherwise.

37. Further, Section 19(b) of the Agreement provided that Lamberti was entitled to 14 days written notice prior to Platesmart terminating the Agreement without cause, or if the

termination were for cause, that Platesmart provide Lamberti with notice of any alleged violations and provide Lamberti with an opportunity to cure same.

38. Platesmart materially breached Section 19(b) of the Agreement by immediately terminating the Agreement, without any prior notice.

39. Platesmart further materially breached Section 3(b) of the Agreement insofar as Platesmart unilaterally and immediately revoked Lamberti's right to exercise his stock options in direct contravention of the express terms of the Agreement.

40. Lamberti intended to exercise his stock options prior to the effective termination of the Agreement, but Platesmart materially breached the Agreement by improperly terminating the Agreement and prematurely revoking Lamberti's vested rights.

41. As a direct, proximate, and legal result of Platesmart's breach of the Agreement, Lamberti has suffered substantial damages.

**WHEREFORE,** Lamberti demands judgment in his favor and against Defendant Platesmart for breach of contract and seeks damages, interest, attorneys' fees, costs and such other relief as this court deems just and proper.

**COUNT II – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

42. Plaintiff Lamberti restates and realleges the allegations of paragraphs 1 through 34 above as though fully set forth herein.

43. This is an action for breach of implied covenant of good faith and fair dealing arising from the contractual relationship between Platesmart and Lamberti under the Agreement.

44. Platesmart had a duty to act in good faith pertaining to its contractual obligations, including but not limited to Section 3(b) – the issuance of stock options to Lamberti; and Section

17(b) – that Platesmart would only terminate the Agreement upon a reasonable and legitimate purpose and that Platesmart would comply with the procedures outlined therein.

45. In light of the provisions of the express Agreement, Lamberti had reasonable expectations that he would be capable of exercising his stock options and that the Agreement would not be terminated capriciously.

46. Platesmart breached its duty by unilaterally revoking Lamberti's contractual right to exercise his vested stock options.

47. Platesmart further breached its duty by acting in bad faith, and terminating Lamberti for reasons not associated with his performance, but rather, for the purpose of shielding Chigo's incompetence and misfeasance.

48. Platesmart's conduct was with legal and actual malice, and the type of bad faith that constitutes a breach of the covenant of good faith and fair dealing in contractual relationships.

49. As a direct, proximate, and legal result of Platesmart's breach of the implied covenant of good faith and fair dealing, Lamberti has suffered substantial damages.

**WHEREFORE,** Lamberti demands judgment in his favor and against Defendant Platesmart for breach of the implied covenant of good faith and fair dealing and seeks damages, interest, attorneys' fees, costs and such other relief as this court deems just and proper.

## COUNT III – TORTIOUS INTERFERENCE WITH AN ADVENTAGEOUS BUSINESS RELATIONSHIP

50. Plaintiff Lamberti restates and realleges the allegations of paragraphs 1 through 34 above as though fully set forth herein.

51. Lamberti has spent approximately twenty years developing a list of wealthy and influential business contacts.

52. Lamberti used this database of pre-existing contacts to assist Platesmart in finding investors and shareholders for Platesmart.

53. Accordingly, Platesmart became aware of Lamberti's contacts, and Platesmart was aware of Lamberti's pre-existing, advantageous relationship with these contacts.

54. Platesmart intentionally and unjustifiably interfered with Lamberti's business relationships with these contacts.

55. Platesmart's misconduct was intentional, malicious, and in bad faith.

56. As a direct, proximate, and legal result of Platesmart's tortious interference with Lamberti's advantageous business relationships, Lamberti has suffered damages.

**WHEREFORE,** Lamberti demands judgment in his favor and against Defendant Platesmart for breach of the implied covenant of good faith and fair dealing and seeks damages, interest, costs and such other relief as this court deems just and proper.

**COUNT IV – VIOLATION OF § 448.08, *FLORIDA STATUTES***

57. Plaintiff Lamberti restates and realleges the allegations of paragraphs 1 through 34 above as though fully set forth herein.

58. Lamberti performed valuable services to Platesmart, which have yet to be compensated in violation of the agreement between the parties and which has forced Lamberti to file suit to recoup same. Specifically, Platesmart has failed and/or refused to provide Lamberti with his final paycheck, which amounts to approximately $4,250.

59. Lamberti is an employee for the purposes of § 448.08, and Platesmart is an employer under § 448.08.

60. Lamberti seeks his reasonable attorneys' fees if he is the prevailing party in recovering all or some of the unpaid wages for which he is suing.

**WHEREFORE,** Lamberti demands judgment in his favor and against Defendant Platesmart for violation of § 448.08, *Florida Statutes*, and seeks damages, interest, attorneys' fees, costs and such other relief as this court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Lamberti demands a trial by jury on all issues so triable.

Dated this 21st day of July, 2016

**DAWSON | ORR**
**PROFESSIONAL ASSOCIATION**

**Michael Fox Orr, Esquire**
Florida Bar No.: 14594
mfo@dawsonorr.com
bsw@dawsonorr.com
bjf@dawsonorr.com
**Joseph D. Pickles, Esquire**
Florida Bar No.: 659886
jdp@dawsonorr.com
50 N. Laura St., Ste. 1675
Jacksonville, Florida 32202
Telephone: (904) 358-8300
Facsimile: (904) 358-8303

*Attorneys for Carl H. Lamberti*